1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7

MAURICE VAN THROWER,

8                                    Petitioner,         Case No. C18-1785-RAJ-MAT

9            v.

10   RONALD HAYNES,                                       REPORT AND RECOMMENDATION

11                                    Respondent.

12
13

INTRODUCTION AND SUMMARY CONCLUSION

14        Petitioner Maurice Thrower is a state prisoner who is currently confined at the Stafford

15   Creek Corrections Center ("SCCC").  He has filed a petition for writ of habeas corpus under 28

16   U.S.C. § 2254 seeking to challenge his 2013 King County Superior Court judgment and sentence.

17   Respondent has filed an answer to the petition and has submitted relevant portions of the state

18   court record. Petitioner has filed a response to respondent's answer.  This Court, having reviewed

19   the petition, all briefing of the parties, and the balance of the record, concludes that petitioner's

20   petition for writ of habeas corpus should be denied and this action should be dismissed with

21   prejudice.

22

FACTUAL BACKGROUND

23        The Washington Court of Appeals, on direct appeal, summarized the facts underlying

REPORT AND RECOMMENDATION
PAGE - 1

petitioner's convictions as follows:

In 2005, Maurice Thrower and Jennifer Wells began dating. Wells lived in Northgate with her eight-year-old daughter, T.W., and T.W.'s younger sibling. Thrower kept his personal belongings at the home and sometimes stayed the night.

In spring 2006, Wells moved the family to the Burke Gilman Place Apartments in north Seattle. Thrower moved his personal belongings to the apartment and sometimes stayed the night. Wells worked during the day and hired a babysitter, C.A., to watch the children. Wells had Thrower come by the apartment to check in on C.A. and the children. By this time, T.W.'s relationship with Thrower had changed; T.W. became openly rude and was generally disrespectful toward him. Thrower and Wells's relationship also deteriorated during this time, and they ended the relationship in 2007, when T.W. was 10 years old.

When T.W. was 12 years old, Wells discovered that T.W. was using her phone to send nude photographs of herself to a boy. Wells asked T.W. why she was acting out and if anyone was touching her. T.W. told her mother that Thrower had sexually molested her. T.W. did not want her mother to contact the police, so Wells did not. When she was 16, T.W. learned that Thrower was back in the community and decided to report the incidents to the police. The State charged Thrower with two counts of child molestation in the first degree.

Before trial, it came to light that C.A., who was one of the State's witnesses, had alleged that Thrower had also had inappropriate sexual contact with her. The prosecutor initially did not seek to introduce evidence of this incident because it was "too far afield."

After voir dire of prospective jurors and still in open court, counsel each exercised seven peremptory challenges by alternately listing juror numbers on a form pleading titled "Peremptory Challenges." The form contained two columns of numbered blank lines, one labeled "Plaintiff/Petitioner" and the other "Defendant/Respondent." While counsel passed the form back and forth, the trial court gave jurors preliminary oral instructions.[1] Once counsel completed the form and signed it, the court read aloud the numbers of the five excused jurors seated in the jury box, filled their seats and one alternate with jurors from the venire, and excused the rest of the panel. That same day, the court filed the form with the county clerk.

At trial, Wells testified that there were "a lot of times" when she would wake up and notice Thrower was no longer in her bed. T.W. testified that while

---

[1] [Court of Appeals footnote 2] The Court explained to the jury, "I'm going to take advantage of the time while [counsel] are doing their work [of exercising peremptory challenges] to instruct you on what comes next. And this is a way of using time efficiently, but it really, especially, applies to the 13 jurors who will hear the case."

REPORT AND RECOMMENDATION
PAGE - 2

she lived with her mother in the Northgate home, Thrower would enter her room at night and crawl into her bed. She testified that she would often wake up to find Thrower lying beside her, pressing his erection against her buttocks and running his hands over her hips and legs. T.W. also testified about an occasion when she was sleeping on the floor of the living room with her two younger cousins and awoke to find Thrower next to her, touching her breast beneath her tank top. When she moved away from him, Thrower stopped and "went back upstairs." T.W. testified that Thrower continued entering her bedroom at night, lying beside her and placing his hands on her hips. C.A. and T.W. both testified that one day they were playing at T.W.'s apartment when Thrower entered the room with his erect penis "hanging out of his zipper."

At trial, C.A. testified that when she was 11 or 12, she would babysit T.W. at Wells's apartment. C.A. said that Thrower "was never [at T.W.'s house], except for the one time" when Thrower exposed himself to the girls. During cross-examination, defense counsel pointed out several inconsistencies between C.A.'s trial testimony and her earlier investigation interviews. Counsel noted that even though C.A. was T.W.'s babysitter, C.A. "didn't do anything about this alleged incident at the time." C.A. confirmed that she did not report the incident to either her mother or Wells. Next the following exchange occurred:

> [Defense]:    You say you were scared, has Mr. Thrower ever threatened you?
>
> [C.A.]:    No.
>
> [Defense]:    Has he ever done anything to make you fear him, physical, other than your allegations around this?
>
> [State]:    I can't hear the witness's response.
>
> [Defense]:    She hasn't given one.
>
> [State]:    Well, I thought she was shaking her head.
>
> [Defense]:    Has he ever threatened you?
>
> [C.A.]:    No.
>
> [Defense]:    No?

C.A. was crying and "shaking." Defense counsel continued cross-examination.

Outside the presence of the jury, the State argued that by asking C.A. about anything "physical" Thrower did to make her afraid, defense counsel opened the

REPORT AND RECOMMENDATION
PAGE - 3

door to the earlier incident involving C.A. and Thrower. The prosecutor had instructed C.A. that "she was absolutely not permitted to talk about the second incident" and argued that is likely why "[C.A.] said [Thrower] only came by the one time." Defense counsel argued that he was questioning C.A. about the specific incident involving Thrower's exposure, not any other incident. The trial court ruled that defense counsel's question of anything "physical, other than your allegations around this" had opened the door and that the evidence was "highly relevant and not unfairly prejudicial" because it went to C.A.'s credibility. Defense counsel requested and received a limiting instruction under ER 404(b).

On redirect, C.A. testified about another incident that she had not mentioned earlier because "[she] was told the story wasn't going to be brought in." The State asked C.A. whether Thrower had done something to make her fearful of him. C.A. answered, "[Y]es," and then provided details. According to C.A., a couple of days after Thrower exposed himself, C.A. was doing laundry in the kitchen. T.W. was outside playing at the time, and no one else was in the house. Thrower picked C.A. up and carried her into the living room, where he kissed her on the forehead. Thrower then said they were going upstairs and that it was okay. Once upstairs in Wells's bedroom, Thrower was on top of C.A., and he started to kiss her on her neck and chest. C.A. did not say anything and started crying. Thrower told C.A. they were going to keep this to themselves and went downstairs. After the incident, C.A. stopped going to Wells's house to babysit, and she testified that she was still scared of Thrower.

Thrower testified in his own defense and denied all allegations of inappropriate sexual conduct. The parties stipulated to Thrower's absence from the community before February 16, 2005, and from June 16-30, 2005.

The jury found Thrower guilty as charged. The court imposed an indeterminate standard range sentence of 180 months to life.

(Dkt. 14, Ex. 2 at 2-6.)

## PROCEDURAL BACKGROUND

Petitioner appealed his convictions to the Washington Court of Appeals, and the Court of Appeals issued an unpublished opinion affirming the convictions on June 30, 2014. (*See id.*, Exs. 2-8.) Petitioner thereafter sought review by the Washington Supreme Court. (*Id.*, Ex. 9.) Petitioner presented the following issues to the Supreme Court for review:

1.    Did the trial court violate Thrower's right to public trial when,

REPORT AND RECOMMENDATION
PAGE - 4

during jury selection, it had counsel exercise peremptory challenges in a manner preventing the public from scrutinizing events?

      2.     Was defense counsel ineffective for accidentally opening the door to otherwise inadmissible and highly prejudicial evidence?

      3.     Was the limiting instruction addressing the evidence to which counsel opened the door incomplete and insufficient?

      4.     Is review appropriate where the Court of Appeals' resolution of the above issues conflicts with Supreme Court and Court of Appeals precedent and the case presents significant constitutional issues?

      5.     Should this Court also review issues petitioner raised in his Statement of Additional Grounds for Review?

(*Id.*, Ex. 9 at 1.)  The Supreme Court denied review without comment on December 1, 2015, and the Court of Appeals issued a mandate terminating direct review on January 22, 2016.  (*Id.*, Exs. 10, 11.)

      On December 6, 2016, petitioner filed a personal restraint petition in the Washington Court of Appeals.  (*Id.*, Ex. 12; *see also* Exs. 13, 14.)  The Acting Chief Judge of the Court of Appeals issued an order dismissing the petition on December 22, 2017.  (*Id.*, Ex. 15.)  Petitioner thereafter sought review in the Washington Supreme Court.  (*Id.*, Ex. 16.)  Petitioner presented the following issues to the Supreme Court for review:

1. Whether Mr. Thrower's Constitutional Right to Trial by an Impartial Jury was Violated by the Trial Court's Decision to Decline to Dismiss a Juror for Cause where the Bias Juror ultimately sat on the Jury.

2. Whether the Trial Court Abused its Discretion by admitting uncharged Bad Acts Evidence regarding an Alleged Exposure Incident?

3. Whether Defense Counsel was Ineffective for Failing to Impeach and Contradict State's Evidence where Contradictory Evidence was readily available to undermine the Prosecutor's Case?

4. Whether the State Prosecutor committed Prosecutorial Misconduct and Failed to Correct or Refrain from using False Testimony?

REPORT AND RECOMMENDATION
PAGE - 5

5.  Whether the Cumulative Error Doctrine Warrants the Reversal of Mr. Thrower's convictions?

(*Id*., Ex. 16 at 2.)  The Supreme Court Commissioner issued a ruling denying review on July 10, 2018, and the Court of Appeals issued a certificate of finality in petitioner's personal restraint proceedings on October 26, 2018.  (*Id*., Ex. 17, 18.)  Petitioner now seeks federal habeas review of his convictions.

<u>GROUNDS FOR RELIEF</u>

| | |
|---|---|
| GROUND ONE: | Violation of a Sixth Amendment right to impartial jury |
| GROUND TWO: | State Trial Court's abuse of discretion in admitting prior bad acts |
| GROUND THREE: | Deprivation of Sixth Amendment right to Effective Assistance of Counsel |
| GROUND FOUR: | Prosecutorial Misconduct |

(Dkt. 5 at 5, 7, 8, 10.)

<u>DISCUSSION</u>

Respondent concedes that petitioner properly exhausted each of his grounds for federal habeas relief by properly presenting the claims to the Washington Supreme Court for review.  (*See* Dkt. 18 at 6.)  Respondent argues, however, that petitioner is not entitled to relief under 28 U.S.C. § 2254(d) because the state courts' resolution of his claims did not constitute an unreasonable application of clearly established federal law as determined by the United States Supreme Court. (*See id*. at 8-28.)

<u>Standard of Review</u>

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A habeas corpus

REPORT AND RECOMMENDATION
PAGE - 6

petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  *See id*. at 407-09.

The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable."  *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).  The Supreme Court has also explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Clearly established federal law means "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer*, 538 U.S. at 71-72.  "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law."  *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

REPORT AND RECOMMENDATION
PAGE - 7

In considering a habeas petition, this Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a state court, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

<u>Right to an Impartial Jury</u>

Petitioner asserts in his first ground for relief that his constitutional right to trial by an impartial jury was violated by the trial court's refusal to remove a juror during jury selection. (*See* Dkt. 5 at 5; Dkt. 5-1 at 28-30.) More specifically, petitioner contends that juror 67 demonstrated actual bias during jury selection, but the trial court refused to dismiss the juror for cause and he ultimately sat on petitioner's jury. (*See id.*)

Trial by an impartial jury is fundamental to the fair administration of criminal justice. *Turner v. Louisiana*, 379 U.S. 466, 472-73 (1965); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). An impartial jury is one that is composed of "jurors who will conscientiously apply the law and find the facts." *Lockhart v. McCree*, 470 U.S. 162, 178 (1986) (quoting *Wainwright v. Witt*, 469 U.S. 412, 423 (1985)). A juror is considered impartial under the Sixth Amendment standard if the juror can set aside any opinion he or she might hold and decide the case solely on the evidence presented at trial. *Patton v. Yount*, 467 U.S. 1025, 1036 (1984); *see also Smith v. Phillips*, 455 U.S. 209, 217 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it.").

The burden is on the defendant to establish that a juror lacks impartiality. *See Wainwright*, 469 U.S. at 423. In evaluating a claim of juror impartiality, deference must be paid to a state trial judge's determination of bias. *See id.* at 426. As the Court noted in *Wainwright*, a finding on

REPORT AND RECOMMENDATION
PAGE - 8

whether a juror is biased "is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province." *Id*. at 428. Such determinations regarding juror impartiality constitute "factual issues" which are subject to the presumption of correctness set forth in § 2254(e)(1). *See id*. at 429.

Petitioner presented his claim of juror bias to the state courts in his personal restraint proceedings, and the state courts rejected the claim. The Washington Supreme Court, in considering the claim of juror bias, first summarized the facts regarding the juror at issue:

> During jury selection, juror 67 informed the court that he had a niece who had been sexually assaulted nearly 10 years earlier when she was 16 years old. He stated that he was trained to be objective in his profession and would do his best to be an objective juror despite his personal experiences and emotions, and that he understood well the presumption of innocence. But juror 67 agreed with defense counsel that he had an emotional response to the situation. And when defense counsel asked juror 67 if he would want someone like him on the jury if he had been accused of sexual assault, he said he would not, explaining he would want a juror who did not have any emotional attachments. State's Resp. App. D. Having exhausted his peremptory challenges, Mr. Thrower asked the court to excuse juror 67 for cause. The court denied the challenge and juror 67 sat on the jury.

(Dkt. 14, Ex. 17 at 2-3.)

The Supreme Court then went on to analyze the claim as follows:

> As for bias, Mr. Thrower claims that he felt that multiple jurors were biased but he lacked sufficient peremptory challenges to exclude all of them. He focuses specifically on juror 67, arguing that the trial court erroneously denied his motion to excuse that juror for cause. But Mr. Thrower fails to establish that juror 67 should have been excused for cause. To find that a juror is biased, a court must be satisfied that the juror cannot disregard his or her opinions and try the case impartially. RCW 4.44.190. Actual bias is "The existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). A prospective juror should be removed for cause when the juror's views or opinions would prevent or impair the performance of his or her duties as a juror. *State v. Hughes*, 106 Wn.2d 176, 181, 721 P.2d 902 (1986). Here, juror 67 made statements that could be seen as equivocal, particularly his admission that he would not choose a juror such as himself because of his emotional background with the issue. But he also stated that

REPORT AND RECOMMENDATION
PAGE - 9

he was fair and objective and could maintain that objectivity. In these circumstances, Mr. Thrower cannot establish that juror 67 was biased or that the trial court abused its discretion in declining to excuse the juror for cause.

(*Id.*, Ex. 17 at 4-5.)

Petitioner argues that this decision of the state court is contrary to well established federal law, and that it is unreasonable in light of the evidence presented. (See Dkt. 24 at 3-7.)  Petitioner then proceeds to parse out the juror's various statements during voir dire, highlighting what he deems to be inconsistencies between the juror's actual statements and what appears in the state court's opinion.  Petitioner notes, for example, that the juror never said that he could be "fair" or "maintain his objectivity" as the Supreme Court concluded.  (*Id.* at 3.)  Petitioner also faults the Supreme Court for omitting from its opinion a statement by juror 67 that petitioner deemed especially egregious and indicative of bias; *i.e.*, the juror's statement that he had "issues of women being taken advantage of."  (*See id.* at 4.)

This Court's review of the of the trial transcript reveals that during voir dire, when asked by the prosecutor if he could listen to the testimony and evaluate the credibility of witnesses, juror 67 responded, "I like to think that I'm a person that's very objective and could do that, and I would definitely do my best.  It's not like I come here saying I am definitely going to be subjective about this, you know – I just had that experience.  It's up to you folks to decide whether that plays into, you know – you know more about the mind than I do."  (Dkt. 28, Ex. 19 at 82.)  When asked whether, based only on the allegations and having heard none of the testimony, he would be able to presume that petitioner was innocent of the charges, juror 67 indicated that he understood very well the concept that people are innocent until proven guilty.  (*Id.*)

Under questioning from defense counsel, juror 67 acknowledged that "I do have issues of women being taken advantage of," but added "obviously not every person who is accused of rape

REPORT AND RECOMMENDATION
PAGE - 10

is guilty[.]" (*Id.*, Ex. 19 at 83.)  When asked about his ability to separate his personal experiences from what he heard in court, juror 67 responded, "I mean, I'd have to expunge my personal experiences from my mind, but I consider myself to be – in my profession I'm trained to be objective and I try to be objective in everything I – I look at." (*Id.*, Ex. 19 at 84.)

Defense counsel went on to ask juror 67 if he were in petitioner's position, accused of child molestation, "would you want somebody with your experiences and feelings sitting on your jury." (*Id.*, Ex. 19 at 85.)  Juror 67 responded, "That's a tough question.  I would say no." (*Id.*)  When asked to explain that response, juror 67 said "Because I'd want them to approach it with fresh eyes. Not to have emotional attachments the whole time in their background.  That's, I guess, what I'm saying.  I think I'm capable but . . . with the different issues, I would not want anybody who had that kind of experience and judgment." (*Id.*)  Juror 67 concluded by explaining "It's an emotional response.  Not, you know, an intellectual." (*Id.*)  Petitioner's counsel then moved to the strike the juror for cause, the prosecutor objected, and the court denied "the request for cause." (*Id.*)

The trial judge's denial of defense counsel's motion to strike juror 67 for cause constitutes a finding that juror 67 was not biased.  As noted above, this finding is presumed to be correct and petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1). Petitioner offers a substantial amount of argument as to why he believes the state court's findings regarding juror 67 were incorrect, but he fails, in the end, to offer clear and convincing evidence sufficient to rebut the presumption of correctness which attaches to the trial court's finding that juror 67 was not biased.  The record adequately supports the trial court's findings with respect to juror 67 and the Washington Supreme Court reasonably rejected petitioner's claim that the trial court abused its discretion in declining to excuse the juror for cause. Petitioner's federal habeas petition should therefore be denied with respect to his first ground for

1   relief.

2   <u>Admission of Prior Bad Act Evidence</u>

3       Petitioner asserts in his second ground for relief that the trial court abused its discretion

4   when it admitted prior bad act evidence in the form of testimony about an alleged act of indecent

5   exposure.  (Dkt. 5 at 7; Dkt. 5-1 at 30.)  Petitioner appears to argue that the admission of this

6   evidence violated his due process rights.  (*See* Dkt. 5-1 at 31.)

7       It is well established that "federal habeas corpus relief does not lie for errors of state law."

8   *Lewis v. Jeffers*, 497 U.S. 764 (1990).  The Supreme Court emphasized in *Estelle v. McGuire*, 502

9   U.S. 62 (1991), that it is not the province of federal habeas courts to re-examine state court

10  conclusions regarding matters of state law and that a federal court, in conducting habeas review

11  "is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United

12  States." *Id*. at 67-68.  Thus, state court procedural and evidentiary rulings are not subject to federal

13  habeas review unless such rulings "violate[] federal law, either by infringing upon a specific

14  constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial

15  guaranteed by due process." *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995) (citing *Pulley*

16  *v. Harris*, 465 U.S. 37, 41 (1984)).  *See also*, *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th

17  Cir. 1991) ("the issue for [a reviewing court] always, is whether the state proceedings satisfied due

18  process; the presence or absence of a state law violation is largely beside the point.")

19      When considering whether erroneously admitted evidence rendered a trial fundamentally

20  unfair, the federal habeas court must determine whether the error "had substantial and injurious

21  effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 638

22  (1993).  In *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009), the Ninth Circuit observed

23  that "even clearly erroneous admissions of evidence that render a trial fundamentally unfair may

1    not permit the grant of federal habeas corpus relief if not forbidden by 'clearly established Federal

2    law,' as laid out by the Supreme Court." The Ninth Circuit went on to explain that

> 3    The Supreme Court has made very few rulings regarding the admission of evidence
> as a violation of due process. Although the Court has been clear that a writ should
> 4    be issued when constitutional errors have rendered the trial fundamentally unfair, .
> . . it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial
> 5    evidence constitutes a due process violation sufficient to warrant issuance of the
> writ.

6

7    *Id.* (citation omitted.)

8        Petitioner, in both his personal restraint petition and his motion for discretionary review of

9    the Court of Appeals' decision dismissing his personal restraint petition, asserted that the trial court

10   abused its discretion in admitting evidence that petitioner allegedly exposed himself to state's

11   witness C.A. and to the victim of the charged offenses, T.W. (*See* Dkt. 14, Ex. 12 at 13-24; Ex.

12   16 at 10-13.) However, petitioner did not specifically identify any federal constitutional basis for

13   his claim, and the state courts addressed only the state law evidentiary issue in resolving the claim.

14   (*See id.*, Ex. 15 at 5-6; Ex. 17 at 5-6.) The state courts concluded that the evidence was relevant

15   to establish that petitioner's touching of T.W. was for the purpose of sexual gratification and, thus,

16   was properly admitted to show petitioner's intent or lustful disposition towards T.W. (*See id.*)

17   The state courts' conclusion that the evidence was properly admitted under state law is entitled to

18   deference.

19        Petitioner argues for the first time in this action that the admission of the ER 404(b)

20   evidence violated his due process rights. Petitioner maintains that the jury could not have drawn

21   any permissible inferences from the alleged prior bad act because T.W. had already testified that

22   petitioner committed the act with which he was charged. (Dkt. 5-1 at 31.) Petitioner argues that

23   the trial court should have excluded evidence of the alleged exposure incident as a "needless

REPORT AND RECOMMENDATION
PAGE - 13

presentation of cumulative evidence." (*Id*. at 32.)

Despite petitioner's claim here that the trial court's failure to exclude the ER 404(b) evidence violated his due process rights, the claim, in fact, implicates only state law concerns. Even assuming the claim could be deemed to implicate petitioner's federal constitutional rights, petitioner cites to no clearly established federal law which would have required the trial court to limit the introduction of the evidence presented here. Accordingly, the decision of the state courts rejecting petitioner's challenge to the evidentiary ruling of the trial court was neither contrary to, nor did it constitute an unreasonable application of, federal law as established by the United States Supreme Court. Petitioner's federal habeas petition should therefore be denied with respect to his second ground for relief.

<u>Ineffective Assistance of Counsel</u>

Petitioner asserts in his third ground for relief that his trial counsel was ineffective in various ways. (*See* Dkt. 5 at 8; Dkt. 5-1 at 32-45.) Petitioner identifies the following four instances of alleged deficient performance: (1) counsel failed to impeach T.W. and C.A. with respect to inconsistencies in their testimony; (2) counsel failed to object to the state's erroneous application of the "rape shield statute;" (3) counsel failed to investigate and interview important witnesses who possessed exculpatory information; and, (4) counsel opened the door to admission of testimony by C.A. that petitioner had sexually abused her as well. (Dkt. 5-1 at 32-45.)

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). "The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Claims of ineffective assistance of counsel are evaluated

REPORT AND RECOMMENDATION
PAGE - 14

under the two-prong test set forth in *Strickland*.  Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient and, (2) that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness.  *Id*. at 688.  Judicial scrutiny of counsel's performance must be highly deferential.  *Id*. at 689.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id*.  In order to prevail on an ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound trial strategy.  *Id*.

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance.  In order to establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.  The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component.  *Id*. at 697.

While the Supreme Court established in *Strickland* the legal principles that govern claims of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether defense counsel's performance fell below the *Strickland* standard.  *Harrington*, 562 U.S. at 101. Rather, when considering an ineffective assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."  *Id*.  As the Supreme Court explained in *Harrington*, "[a] state court must be

REPORT AND RECOMMENDATION
PAGE - 15

granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*.

### 1.  Failure to Impeach Witnesses

Petitioner first complains that defense counsel rendered ineffective assistance by failing to impeach and contradict the testimony of T.W. and C.A.  (Dkt. 5-1 at 32-38.)  Petitioner cites to counsel's failure to impeach these witnesses regarding what he claims was fabricated ER 404(b) evidence that he exposed himself to T.W. and C.A.  (*Id*. at 33.)  Petitioner also cites to inconsistencies between statements the witnesses made to the police or other investigators pretrial, and their trial testimony.

In particular, petitioner cites to a statement T.W. made to a detective about petitioner touching her breasts and thighs when she was eight years old and T.W.'s testimony at trial where she denied that petitioner had touched anything other than her thigh.  (Dkt. 5-1 at 33-34.)  Petitioner also cites to trial testimony by T.W. that she was "shocked" when petitioner entered her bedroom and "his erection was hanging out of his zipper," and that she had never seen petitioner's penis before.  (*Id*. at 34; Dkt. 28, Ex. 22 at 259.)  Petitioner contrasts this testimony with statements made by T.W. during a defense interview that there were times petitioner would take his towel off and she was able to see if he had an erection.[2]  (*See* Dkt. 5-1 at 34.)  Petitioner also notes that T.W. responded to a question during the defense interview asking how big petitioner's penis was, stating that it was "over five inches."  (*Id*. at 34-35.)

Petitioner cites as well to inconsistencies between C.A.'s trial testimony and statements she made during a defense interview about when a separate incident of sexual abuse had occurred

---

[2]  While petitioner appears to have included some portions of the defense interview with his petition, the court is unable to locate the excerpts referenced by petitioner here.

REPORT AND RECOMMENDATION
PAGE - 16

relative to the incident when petitioner exposed himself to T.W. and C.A.  (*Id*. at 35.)  Finally,

petitioner points to inconsistencies between C.A.'s trial testimony and statements she made during

a defense interview regarding how often she babysat for T.W. during the summer of 2006.  (*Id*. at

36-37.)

The Washington Court of Appeals rejected petitioner's claim challenging counsel's

performance in relation to the testimony of T.W. and C.A., and explained its conclusion as follows:

> Thrower next contends that defense counsel was ineffective for failing to impeach T.W. with inconsistencies in her testimony. Though not entirely clear, Thrower references alleged discrepancies regarding (1) the location where Thrower touched T.W.'s breast; (2) the location where T.W. first saw Thrower's exposed penis; (3) the date when Thrower took C.A. upstairs and kissed her; and (4) the number of T.W.'s relatives living in Wells's apartment at the time of the molestation. But a review of the transcript shows that defense counsel extensively cross-examined T.W. and C.A. on these and other inconsistencies, pointing out discrepancies between T.W.'s trial testimony and the statements she made to law enforcement. Thrower fails to articulate how defense counsel should have proceeded differently, or how the outcome of proceedings would have been different if he had.

(Dkt. 14, Ex. 15 at 7-8.)

The Washington Supreme Court likewise rejected the claim in its order denying

petitioner's motion for discretionary review.  The Supreme Court explained its conclusion as

follows:

> Mr. Thrower argues that defense counsel was ineffective in investigating and cross-examining T.W. and C.A. To succeed on this claim, Mr. Thrower must show both professionally deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Scrutiny of counsel's conduct is highly deferential, and courts will indulge in a strong presumption of reasonableness. *State v. Garrett*, 124 Wn.2d 504, 518-19, 881 P.2d 185 (1994). Deficient performance is not shown by matters that go to trial strategy or tactics. *State v. Hendrickson*, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996). To show prejudice, Mr. Thrower must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Thomas*, 109 Wn.2d 222, 226, 743 P.2d 816

REPORT AND RECOMMENDATION
PAGE - 17

(1987). If Mr. Thrower fails to establish either element of his ineffective assistance claim, this court need not address the other element. *Hendrickson*, 129 Wn.2d at 78.

Mr. Thrower's argument on the testimony of T.W. and C.A. is directly related to his claim that the prosecutor presented false testimony and that the trial court violated his right to present a defense. As to all of these related claims he believes T.W. and C.A. were engaged in sexual behavior and fabricated testimony to cover up their own conduct. But Mr. Thrower provides no competent, admissible evidence to support this accusation. He bases his argument on speculation arising out of some inconsistencies in C.A.'s testimony. As the acting chief judge noted, defense counsel conducted an effective cross-examination of C.A. pointing out these inconsistencies. Mr. Thrower fails to establish either deficient performance or prejudice. . . .

(Dkt. 14, Ex. 17 at 7.)

This Court has reviewed the testimony of T.W. and C.A., including all cross-examination conducted by petitioner's counsel, and the record confirms that petitioner's counsel did, in fact, extensively challenge inconsistencies in the witnesses' testimony. The fact that counsel did not cross-examine the witnesses as aggressively as petitioner would have preferred, or point out every inconsistency petitioner believes should have been exposed or highlighted, does not undermine the conclusion of the state courts that petitioner failed to establish deficient performance. Moreover, petitioner offers no evidence demonstrating that more or different cross-examination would have affected the outcome of the trial. Petitioner fails to demonstrate that the conclusion of the state courts pertaining to the manner in which defense counsel attempted to impeach T.W. and C.A. was contrary to, or constituted an unreasonable application of, United States Supreme Court precedent. Petitioner's federal habeas petition should therefore be denied with respect to the first part of petitioner's ineffective assistance of counsel claim.

### 2.    *Rape Shield Statute*

Petitioner asserts that defense counsel rendered ineffective assistance by not allowing him

1    to testify that when he entered T.W.'s room on the day of the alleged "exposure incident" he saw

2    T.W. and C.A. engaged in a sexual situation.  (*Id*. at 39.)  Though petitioner's argument is

3    somewhat abbreviated in his federal habeas materials, a review of the personal restraint petition

4    submitted to the state courts on collateral review reveals that underlying this claim is petitioner's

5    contention that T.W. and C.A. fabricated the indecent exposure incident to cover up their own

6    sexual activity.  (*See* Dkt. 14, Ex. 12 at 39-43.)  Petitioner argued that his counsel should have

7    objected to application of the rape shield statute to preclude this evidence of prior sexual activity

8    or misconduct of the victim, T.W.  (*Id*. at 39-40.)

9         The record reflects that the trial court asked defense counsel, in relation to a pretrial motion

10   by the state, whether counsel was intending on offering any evidence regarding the victim's past

11   sexual history as provided in RCW 9A.44.020.  (Dkt. 28, Ex. 21 at 21.)  Petitioner's counsel

12   indicated he was not intending to offer any such evidence and explained, "I'm well aware of the

13   Rape Shield Statute and would not violate that."  (*Id*.)

14        As the passage from the Washington Supreme Court's decision set forth in the preceding

15   section makes clear, petitioner provided no competent, admissible evidence to support his

16   accusation that T.W. and C.A. were engaged in sexual behavior and fabricated their testimony to

17   cover-up their own conduct.  (Dkt. 14, Ex. 17 at 7.)  Moreover, petitioner fails to demonstrate that

18   there was any applicable exception to the rape shield law which might have permitted the evidence

19   to come in had counsel sought to introduce it.  Petitioner fails to demonstrate that counsel's

20   performance was deficient in this respect or that he suffered any prejudice as a result of the alleged

21   deficient conduct.  Petitioner's federal habeas petition should therefore be denied with respect to

22   the second part of petitioner's ineffective assistance of counsel claim as well.

23   / / /

REPORT AND RECOMMENDATION
PAGE - 19

3.      *Failure to Interview and Investigate Witnesses*

Petitioner asserts that defense counsel rendered ineffective assistance by failing to investigate and interview important witnesses who had exculpatory information, such as T.W.'s grandmother and uncle. (Dkt. 5-1 at 41.) Petitioner asserts that these individuals lived in the same home as T.W. and would have been able to corroborate petitioner's testimony that he was not at the home at the time of the incidents. (*See id*. at 42-43.) Petitioner claims that given the inconsistencies in the testimony of the state's complaining witnesses at trial, counsel's decision not to investigate and interview these witnesses cannot be deemed reasonably informed professional judgment. (*Id*. at 42.)

The Washington Court of Appeals rejected this claim on direct appeal:

> Thrower alleges that defense's failure to call certain witnesses constituted ineffective assistance of counsel. At trial, Thrower testified in his own defense. Defense counsel did not call any other witnesses. Thrower contends that testimony from T.W.'s grandmother, uncle, and the uncle's girlfriend that "they lived in the apartment [at various intervals] and were using [sic] the downstairs as a living quarters would have no doubt created reasonable doubt in the jury producing an acquittal for Thrower." Generally, the decision to call a witness is a matter of legitimate trial tactics and will not support an ineffective assistance of counsel claim. Defense counsel likely considered and decided against pursuing testimony that may not have been favorable to Thrower's case, especially given that these witnesses are members of T.W.'s family. Thrower does not show that this testimony had a reasonable probability of changing the outcome of his trial. We hold that Thrower does not show deficiency and therefore that he does not show ineffective assistance of counsel.

(Dkt. 14, Ex. 2 at 13-14 (footnote omitted).)

Petitioner fails to demonstrate that this decision of the Court of Appeals was unreasonable. Petitioner offers no actual evidence that these witnesses possessed exculpatory information or that, if called, they would have testified favorably to the defense. Under these circumstances, petitioner fails to demonstrate that the Court of Appeals' resolution if this claim was contrary to, or

REPORT AND RECOMMENDATION
PAGE - 20

1    constituted an unreasonable application of, United States Supreme Court precedent.    Thus,

2    petitioner's federal habeas petition should be denied with respect to the third part of his ineffective

3    assistance of counsel claim.

4         *4.    Opening Door to Prejudicial Evidence*

5         Petitioner asserts that his trial counsel rendered ineffective assistance when he opened the

6    door to C.A.'s claim that she had also been molested by petitioner.  (Dkt. 5-1 at 44.)  Petitioner

7    maintains that absent this testimony, which he asserts was false, there is a reasonable likelihood

8    he would have been acquitted of the molestation charges involving T.W.  (*Id.*)  The Washington

9    Court of Appeals rejected this claim on direct appeal of petitioner's conviction.    The Court

10   explained its conclusion as follows:

> Thrower first alleges that his trial counsel provided ineffective assistance to
> Thrower's significant prejudice by opening the door to testimony about Thrower's
> uncharged misconduct.  This court reviews an ineffective assistance of counsel
> claim de novo as a mixed question of law and fact. . . .
>
> By asking if Thrower had "ever done anything to make you fear him,
> physical, other than your allegations around this," the defense intended to show
> only that Thrower never "threatened" C.A.  Defense counsel did not make a
> strategic or tactical decision to open the door to Thrower's alleged earlier
> uncharged conduct, given counsel's strenuous objections to admission of C.A.'s
> testimony about the incident.
>
> Our Supreme Court has stated that "questions on cross-examination may
> elicit surprisingly damaging answers," but "the competence of counsel must be
> judged from the whole record and not from isolated segments of it."  The law
> affords trial counsel wide latitude in the choice of tactics.  Defense counsel's
> continued cross-examination of C.A. was aimed at highlighting inconsistencies in
> her testimony.  In closing argument, defense counsel again used the incident to
> attack C.A.'s credibility, arguing that C.A. "was crying because she got caught
> lying" and "[s]he got caught with inconsistencies."  Counsel requested and received
> a limiting instruction.  Thrower has not shown that defense counsel's tactics
> constitute deficient performance.
>
> Our Supreme Court has also recognized that when evaluating similar fact
> evidence, "[a] careful and methodical consideration of relevance, and an intelligent

REPORT AND RECOMMENDATION
PAGE - 21

weighing of potential prejudice against probative value is particularly important in sex cases, where the prejudice potential of prior acts is at its highest." Here, we conclude that Thrower has not shown prejudice. The State presented substantial circumstantial evidence apart from C.A.'s testimony, including Thrower's own testimony, which had a detailed description of T.W.'s bed. Thrower described T.W.'s "metal futon bed" and testified "it made a lot of noise" and would squeak, though he had earlier said that he only "cleaned her room" one time. Viewing the admission of C.A.'s testimony about the uncharged misconduct in the context of the whole record, Thrower fails to show a reasonable possibility that but for this claimed error, the outcome of his trial would have been different.

(Dkt. 14, Ex. 2 at 6-8 (footnotes omitted).)

The trial transcript confirms that it was during defense counsel's vigorous attempt to highlight inconsistencies in C.A.'s testimony regarding the indecent exposure incident that he inadvertently opened the door to admission of testimony concerning C.A.'s claim that petitioner had engaged in misconduct of a sexual nature with her as well. (*See* Dkt. 28, Ex. 23 at 377-79, 382-91.) Defense counsel thereafter attempted to mitigate the impact of the testimony regarding the second incident by requesting a limiting instruction, highlighting a number of inconsistencies in C.A.'s testimony surrounding that incident on cross-examination, and using the incident to attack C.A.'s credibility during closing argument. (*See id*., Ex. 23 at 391, 409-12, 555.) Though defense counsel's tactics in attempting to recover from the unexpected admission of testimony of the second incident were sound, opening the door to admission of the evidence in the first instance was neither strategic nor sound.

However, affording the Court of Appeals the deference it is due on federal habeas review, this Court concludes that the state court's application of the *Strickland* standard to deny petitioner's ineffective assistance of counsel claim arising out of the admission of evidence of the second incident was not unreasonable. The Court reaches this conclusion based primarily upon the manner in which the Court of Appeals resolved the issue of prejudice under the second prong of

the *Strickland* test.[3]  The Court of Appeals properly reviewed the admission of C.A.'s testimony

about the uncharged misconduct in light of the record as a whole and it was not unreasonable,

based upon this review, for the Court of Appeals to conclude that petitioner had not shown there

was a reasonable probability that the outcome of the trial would have been different but for the

alleged error.  Certainly nothing in the record before this Court suggests that a different outcome

was likely absent the alleged deficient conduct.  Accordingly, petitioner's federal habeas petition

should be denied with respect to the fourth part of his ineffective assistance of counsel claim.

<u>Prosecutorial Misconduct</u>

Petitioner asserts in his fourth ground for federal habeas relief that his conviction was the

direct consequence of prosecutorial misconduct and he cites two instances of alleged misconduct:

(1) the prosecutor knowingly used, and failed to correct, false testimony; and, (2) the prosecutor

made false statements during opening statements.  (*See* Dkt. 5-1 at 45-55.)

*1.     Knowing Use of False Evidence*

Petitioner asserts that the prosecutor instructed its witness, C.A., to withhold testimonial

evidence at trial and that this directive constituted subornation of perjury.  This claim involves

C.A.'s testimony surrounding the two uncharged incidents of alleged misconduct by petitioner

which were discussed in the preceding sections of this Report and Recommendation.  C.A. testified

on direct examination that she had only interacted with petitioner one time.  (Dkt. 28, Ex. 23 at

358.)  C.A. then went on to describe that interaction as involving the indecent exposure incident

discussed above.  (*See id*., Ex. 23 at 359-365.)  Near the end of the state's direct examination, the

prosecutor asked C.A. if anybody had told her what to say to petitioner's counsel and his

---

[3]  As noted above, a reviewing court need not address both components of the *Strickland* inquiry if an insufficient showing is made on one component.  *Strickland*, 466 U.S. at 697.

REPORT AND RECOMMENDATION
PAGE - 23

1    investigator during her earlier interview with them, or if anybody had told her what to say in court.

2    (*Id.*, Ex. 23 at 368.)  C.A. denied that anyone had told her what to say in either instance.  (*Id.*)

3        After defense counsel concluded his cross-examination of C.A., the prosecutor advised the

4    court that there was a second incident involving petitioner and C.A. that she had not initially sought

5    to introduce because she deemed it "too far afield."  (*Id.*, Ex. 23 at 382.)  That incident involved

6    petitioner making advances on C.A. while she was at T.W.'s house doing laundry and, more

7    specifically, involved petitioner kissing C.A. and then picking her up and physically moving her

8    to a bedroom while telling her that T.W.'s mom never needed to know about the incident.  (*Id.*,

9    Ex. 23 at 383.)  The prosecutor argued that petitioner's counsel opened the door to this testimony

10   when he pressed C.A. on the issue of whether petitioner had ever done anything to make her afraid

11   of him.  (*Id.*)  The prosecutor, while making her offer of proof to the court about this additional

12   testimony, noted that she had instructed C.A. prior to her testimony that she was not permitted to

13   talk about the second incident.  (*Id.*, Ex. 23 at 388.)  In petitioner's view, the prosecutor's conduct

14   in this regard constituted subornation of perjury.  (Dkt. 5-1 at 46-50.)

15       Petitioner also asserts that the prosecutor failed to correct false testimony by T.W. about

16   "sexting" incidents T.W. had gotten in trouble for.  Petitioner cites to trial testimony by T.W. about

17   getting into trouble for two sexting incidents.  (Dkt. 28, Ex. 22 at 328.)  T.W. had previously

18   revealed to the investigating detective, the prosecutor, and defense counsel that she had only gotten

19   into trouble once for sexting.  (*See id.*)  During the prosecutor's redirect examination of T.W., the

20   prosecutor asked T.W. whether anybody had asked her if she had gotten into trouble more than

21   once and T.W. responded "No."  (*Id.*)  Petitioner suggests that this answer was false in light of

22   T.W.'s testimony that there were two such incidents, and he suggests that the prosecutor should

23   have corrected this answer.  (*See* Dkt. 5-1 at 50-51.)

REPORT AND RECOMMENDATION
PAGE - 24

It is well established that a conviction obtained by the knowing use of false evidence is fundamentally unfair, and that such a conviction may not stand under the Fourteenth Amendment if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. *Napue v. Illinois*, 360 U.S. 264, 269-71 (1950). *See also*, *United States v. Agurs*, 427 U.S. 97, 103 (1976). The knowing use of false evidence violates due process regardless of whether the prosecutor solicits the false evidence or merely allows it to go uncorrected when it appears. *Napue*, 360 U.S. at 269. The presentation of inconsistent or contradictory testimony is not sufficient to establish that a prosecutor knowingly presented false testimony. *See United States v. Sherlock*, 962 F.2d 1349, 1364 (9th Cir. 1992), *United States v. Necoechea*, 986 F.2d 1273, 1280 (9th Cir. 1993).

In order to succeed on a claim that the prosecutor used false evidence to convict him, a petitioner "must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003) (citing *Napue*, 360 U.S. at 269-71). The test for materiality under *Napue* is whether there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Agurs*, 427 U.S. at 103.

The Washington Court of Appeals, on direct appeal of petitioner's conviction, succinctly disposed of petitioner's subornation of perjury claim as follows:

> Thrower first contends that the prosecutor suborned perjury by "going along with the State's witnesses [C.A. and T.W.], knowing very well that this testimony was false." The record does not support Thrower's claim. C.A.'s testimony about one incident, when it came to light later that there were two, was not perjury. Nor does defense impeachment highlighting inconsistencies in testimony establish perjury. Thrower does not show that the State suborned perjury.

REPORT AND RECOMMENDATION
PAGE - 25

(Dkt. 14, Ex. 2 at 13.)

Petitioner fails to demonstrate that this conclusion of the state court is contrary to, or constitutes an unreasonable application of, clearly established federal law.  To the extent petitioner complains about C.A. testifying that she had only one interaction with petitioner when, in fact, there was a second incident, petitioner fails to demonstrate any violation of his constitutional rights.  The prosecutor had specifically instructed C.A. not to disclose the second incident, the one that involved petitioner kissing C.A. and picking her up and carrying her to a bedroom, apparently because the prosecutor did not deem the incident admissible prior to petitioner's counsel opening the door to admission of the testimony based on his questioning of C.A. during cross-examination.  Advising a witness not to disclose inadmissible evidence cannot reasonably be deemed subornation of perjury.[4]  To the extent C.A.'s testimony that there was only one incident instead of two can be deemed false testimony under *Napue*, it certainly cannot be said that such testimony was material as there is no reasonable likelihood that petitioner would have been prejudiced by the withholding of evidence of the second interaction.

To the extent petitioner complains about T.W.'s trial testimony concerning whether she got in trouble more than once for sexting, this Court notes that the exchange petitioner takes issue with went as follows:

> [PROSECUTOR]:  And so – had anybody – *did anybody ask you* whether or not you had gotten in trouble more than once?
>
> [T.W.]:  No

---

[4]  Respondent, in his answer to petitioner's petition, suggests that C.A. did not initially reveal the second incident during her direct testimony because of a pretrial ruling granting the defense request to exclude the evidence.  (*See* Dkt. 18 at 25.)  However, respondent offers no citation to the record to support this assertion and this Court was unable to find any such ruling in the trial transcript.  In fact, the trial court made clear in its ruling on the admissibility of this evidence in the midst of trial that the evidence was not the subject of a motion in limine.  (*See* Dkt. 28, Ex. 23 at 386.)

REPORT AND RECOMMENDATION
PAGE - 26

(Dkt. 28, Ex. 22 at 328 (emphasis added).)

While this exchange occurred within the context of testimony by T.W. about why she had previously reported getting in trouble only once for texting when, in fact, she had gotten in trouble twice, so far as this Court can discern, T.W.'s answer to the question posed by the prosecutor was accurate. Petitioner cites to portions of the transcript of T.W.'s pretrial defense interview to support his claim that T.W.'s trial testimony was false, but the excerpts cited, in fact, undermine petitioner's claim. (*See* Dkt. 5-1 at 91-92.) The transcript reveals that T.W. did, in fact, report only one instance of getting in trouble for sexting to defense counsel. (*See id*.) However, the transcript does not reveal, as relevant here, that T.W. was ever *asked* by anyone if she had gotten in trouble more than once. The record therefore reveals no false testimony in this regard, and petitioner's claim necessarily fails.

Finally, because petitioner's arguments throughout his habeas petition focus extensively on inconsistencies in the testimony of T.W. and C.A., this Court notes again that the presentation of inconsistent or contradictory testimony is not sufficient to establish that a prosecutor knowingly presented false testimony. There is simply no evidence in the record that the prosecutor acted improperly in her presentation of the state's evidence. Accordingly, petitioner's fourth ground for federal habeas relief should be denied with respect to his claim that the prosecutor knowingly presented, or failed to correct, false testimony in violation of petitioner's due process rights.

2.    *Opening Statements*

Petitioner asserts that the prosecutor committed misconduct when she argued in her opening statement that T.W. saw petitioner, who had been out of the community for a period of time, on Aurora Avenue and that this caused her to call her mother, sobbing, from the nurse's office at her school after which they made the decision to file a police report regarding petitioner's

1    prior molestation of T.W.  (*See* Dkt. 5-1 at 52; Dkt. 28, Ex. 20 at 267-68.)  Petitioner points out

2    that when T.W. was asked at trial whether she had seen petitioner between the time he returned to

3    Seattle and the day of her testimony at trial, T.W. said she had not.  (*See* Dkt. 5-1 at 53; Dkt. 28,

4    Ex. 22 at 304.)  Petitioner asserts that the prosecutor's misleading statement "[fed] the passion and

5    prejudice of the jury."  (Dkt. 5-1 at 53.)

6        When a prosecutor's conduct is placed in question, unless the conduct impermissibly

7    infringes on a specific constitutional right, the standard of review is the "narrow one of due process,

8    and not the broad exercise of supervisory power."  *Darden v. Wainwright*, 477 U.S. 168, 181-82

9    (1986); *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-43 (1974).  To obtain relief on a claim of

10   prosecutorial misconduct, a federal habeas petitioner must do more than show that "the

11   prosecutor's remarks were undesirable or even universally condemned."  *Darden*, 477 U.S. at 180-

12   81.  A petitioner must demonstrate that the allegedly improper comments made by the prosecutor

13   "so infected the trial with unfairness as to make the resulting conviction a denial of due process."

14   *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 643).  In order to assess a claim that a

15   prosecutor's comments rendered a trial so fundamentally unfair as to deny a petitioner due process,

16   it is necessary to examine the entire proceedings and place the prosecutor's statements in context.

17   *See Greer v. Miller*, 483 U.S. 756, 765-66 (1987).

18       Prosecutorial misconduct which rises to the level of a constitutional violation nonetheless

19   provides a basis for federal habeas relief only if the misconduct is deemed prejudicial under the

20   test announced by the Supreme Court in *Brecht*.  *See Shaw v. Terhune*, 380 F.3d 473, 478 (9th Cir.

21   2004).  Under *Brecht*, habeas relief may be granted only if an error "had substantial and injurious

22   effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637

23   (1993).

REPORT AND RECOMMENDATION
PAGE - 28

The Washington Court of Appeals rejected petitioner's prosecutorial misconduct claim arising out of the prosecutor's opening statement in petitioner's personal restraint proceedings.[5] The Court explained its conclusion as follows:

> Thrower contends that the State committed misconduct when the prosecutor told the jury in opening statement that T.W. reported the molestation when Thrower returned to Seattle and T.W. "saw Mr. Thrower up on Aurora." He contends that T.W. testified later that this never happened.
>
> Prosecutorial misconduct requires a showing that the prosecutor's conduct was improper and prejudicial in the context of the entire record and circumstances at trial. State v. Hughes, 118 Wn. App. 713, 727, 77 P.3d 681 (2003). The defendant bears the burden of showing both prongs of prosecutorial misconduct. Hughes, 118 Wn. App. at 727. Moreover, a defendant who fails to object to an improper remark waives the right to assert prosecutorial misconduct unless the remark was so 'flagrant and ill intentioned' that it caused enduring and resulting prejudice that a curative instruction could not have remedied. State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994). Thrower did not object, and the comment was not flagrant or ill-intentioned nor did it result in enduring or resulting prejudice that could not have been remedied with a proper objection and curative instruction. In any event, the jury heard the testimony from T.W. and the error was not repeated in closing argument.

(Dkt. 14, Ex. 15 at 11.)

The state court reasonably concluded that, when the prosecutor's inaccurate comment during opening statement is viewed in the context of the entire record, it cannot be said that the comment resulted in any prejudice. Petitioner assigns undue weight to a relatively minor misstatement which was essentially rectified by T.W.'s own testimony. Moreover, the jurors were properly instructed that the lawyers' statements are not evidence and that the evidence to be considered by the jury was the testimony and the exhibits. (See Dkt. 28, Ex. 23 at 508-09.) Jurors

---

[5] While petitioner clearly presented this issue to the Washington Supreme Court in his amended motion for discretionary review in his personal restraint proceedings, (see Dkt. 14, Ex. 16 at 2-6), the Supreme Court did not address the claim and, in fact, never even identified it as a distinct claim. This Court therefore reviews the claim in relation to the Court of Appeals' decision on this issue.

REPORT AND RECOMMENDATION
PAGE - 29

are presumed to follow their instructions, *see Weeks v. Angelone*, 528 U.S. 225, 234 (2000) (citing, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)), and nothing in the record before this Court suggests that they did not do so in this instance.  Petitioner fails to demonstrate that the state courts' conclusion with respect to the prosecutor's alleged misconduct during her opening statement was contrary to, or constituted an unreasonable application of, United States Supreme Court precedent. This portion of petitioner's fourth ground for relief should therefore be denied.

Cumulative Error

Petitioner, in his memorandum in support of his petition, presents a final claim which does not appear in the petition itself; *i.e.*, that the cumulative effect of the errors alleged warrants reversal of his conviction.  (Dkt. 5-1 at 55-57.)  Even where no single error rises to the level of a constitutional violation, "the combined effect of multiple trial court errors violates due process where it renders the resulting criminal trial fundamentally unfair."  *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).  As petitioner fails to establish that any errors occurred, his claim that the accumulation of several errors requires reversal of his conviction necessarily fails.   Accordingly, petitioner's federal habeas petition should be denied with respect to his final ground for relief.

Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537

REPORT AND RECOMMENDATION
PAGE - 30

U.S. 322, 327 (2003).  Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his petition.[6]

<u>CONCLUSION</u>

For the reasons set forth above, this Court recommends that petitioner's petition for writ of habeas corpus be denied and that this action be dismissed with prejudice.  This Court further recommends that a certificate of appealability be denied.  A proposed order accompanies this Report and Recommendation.

<u>OBJECTIONS</u>

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **twenty-one (21) days** of the date on which this Report and Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14) days** after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **<u>March 6, 2020</u>**.

DATED this <u>13th</u> day of February, 2020.

_____
Mary Alice Theiler
United States Magistrate Judge

---

[6] Petitioner filed a motion with this Court requesting that he be provided an application and instructions for filing a certificate of appealability with the Ninth Circuit Court of Appeals.  (*See* Dkt. 29.)  Because this Court does not maintain any such forms, petitioner will need to direct his request to the Ninth Circuit.  Petitioner's motion is DENIED as moot.

REPORT AND RECOMMENDATION
PAGE - 31